1806.

Saturday,
March 22d.

HENRY SPARKS, junior, who survived ISAAC LLOYD *against* EDWARD GARRIGUES and ROBERT HAYDOCK.

When the condition of a bond is for the payment of interest annually and of the principal at a distant day, the interest may be recovered before the principal is due, by an action of debt on the bond; and if the defendant pleads payment and attempts to defeat the bond by giving evidence of fraud, want of consideration, &c. but fails, and makes no set-off, judgment shall be entered for the penalty, with leave to take out execution in the first instance for the interest due at the commencement of the action. For the interest and principal accruing since, the plaintiff must move the court for executions, when the defendant may make any defence other than that which has been tried, and arising subsequent to the suit. Such a plea of payment is not under the defalcation Act, but is allowed under the equity powers of the court to give the defendant an equitable defence.

THIS was an action of debt brought to *September* term 1800, on a bond given by the defendants to *Lloyd* and *Sparks*, bearing date the 20th of *May* 1797, in the penalty of 2000 dollars, conditioned to pay 1000 dollars on the 20th of *May* 1801, with lawful interest *to be paid annually* from the date. The defendants pleaded *payment*, with leave to give the special matter in evidence; and agreeably to a rule of the court gave the following notice to the plaintiff: " Please to take no-" tice that under the plea of payment in the above action, the " defendants mean to give in evidence that the bond on which " the action was brought was given on a purchase of a tract of " land containing 2299 acres, more or less, lying in the patent " of *Minisink*, *Ulster* county, state of *New York*, together with " another adjoining tract. That the said lands were mortgaged " by *Jesse Dickerson* to the said *Lloyd* and *Sparks*, who agreed " on receiving payment of this and three other bonds given at " the same time by the defendants to them on the same account, " to exonerate the said lands from the said mortgage. That the " said *Lloyd* and *Sparks* or one of them assured the defendants " at the time of giving the said bonds, that the titles to the said " lands were good, but did not shew them the title deeds and " papers, though then in their possession. That the defend-" ants besides paying 1000 dollars to the said *Dickerson* on ac-" count of the said purchase, and 1000 dollars the amount of " one of the said bonds, have expended 1000 dollars and more " in improvements. That it since appears that *Jesse Dickerson* " had no title to the said land first mentioned, which was the " only valuable part of the property so purchased; the other " tract being of very little value, except to the owner of the first " mentioned tract." The replication was *non solvit.*

At the trial the defendants went fully into their defence under the notice; they examined witnesses and read depositions as to the matter of title, and to shew that by the defect in *Dickerson's* title there was a failure of consideration. They alleged fraud and misrepresentation in the plaintiff, and urged them in avoidance of the bond; but did not attempt a set-off of any kind.

At the time of action brought, there was due upon the bond only a year's interest, one year's interest having been paid, and the payment indorsed on the bond; whereas at the time of trial the entire principal was due; but it was agreed that the quantum should form no question before the jury. A verdict was given generally for the plaintiff, with liberty to the court to enter the judgment for such sum and in such form as they should think proper; and this was the subject of two different arguments.

It was argued the first time at *December* term 1805, in the absence of Chief Justice SHIPPEN, by *Ross* and *Levy* for the plaintiff, upon their motion to enter judgment for the penalty, and to take out execution for the sum due at that time, viz. principal and interest; and by *Hare* and *Rawle* contra, who contended that judgment should be entered for the defendants, as the interest could not be recovered in this kind of action, or at all events merely for sixty dollars, the year's interest due at the commencement of the action.

For the plaintiff. The condition was to pay the interest annually, and a year's interest was due and unpaid when the action was brought; the penalty therefore was forfeited, and judgment should be for that sum. In *Gladman* v. *Henchman*, (*a*) a mortgage was made for 450*l.* payable at the end of five years, and interest in the mean time payable half yearly; the mortgage was held to be forfeited by nonpayment of the interest. The interest is an instalment; and where any instalment is due and unpaid, the obligee is entitled to his judgment for the penalty, and to execution as the payments become due. *Darby* v. *Wilkins* (*b*), *Land* v. *Harris* (*c*), *Bonafous* v. *Ribot* (*d*), *Masfen* v. *Touchet* (*e*), is in point. It was debt on bond conditioned to pay 600*l.* and interest, in three years from the date, by instalments of 15*l.* half yearly, and 615*l.* at the end of the term, which was not yet arrived. On failure of payment of interest, obligee brought his action; and it was moved to stay proceedings on payment of the interest due. But the court ordered judgment to be entered for the whole, with only a stay of execution on payment of the interest due. *Howell* v. *Hanforth* (*f*), *Judd* v. *Evans* (*g*). If by

(*a*) 2 *Vern.* 135.
(*b*) 2 *Stra.* 957.
(*c*) 1 *Stra.* 515.
(*d*) 3 *Burr.* 1370.
(*e*) 2 *W. Black.* 706.
(*f*) 2 *W. Black.* 843. *S. P.*
(*g*) 6 *D. & E.* 396. *S. P.*

1806.

SPARKS
v.
GARRI-
GUES.

a bond, money is payable by instalments, and in such manner that the nonpayment of a particular sum at a day certain, makes the forfeiture of the whole bond, and accordingly for the nonpayment of such sum there is a *verdict for the plaintiff, finding it to be the deed of the party,* upon the defendant's bringing into court *all that the master shall hold to be due,* and letting the verdict stand as a security for future payment, the court will by rule stay further proceedings on the bond. *Webb* v. *Divile.* (a) This is precisely our case, except that by lapse of time every thing is due on the bond, and nothing but the payment of the whole will stay execution. It is particularly proper that judgment should be for the penalty, and execution for entire principal and interest, because the trial has been on the merits, the consideration of the bond discussed, and every objection that can be urged against it has been urged and decided. The jury have affirmed the deed. If judgment and execution are to be confined to the sixty dollars, the defendants may traverse this bond a second time, and repeat the objections that have already been answered; or perhaps it may bar any future suit on the bond.

For the defendants. In the first place the plaintiff is not entitled to judgment at all. The principal was certainly not due at the commencement of the action, that is at the time process issued, and therefore cannot be noticed in this suit. *Lowry* v. *Lawrence.* (b) Then as to the interest, it is in the nature of damages, and can be recovered as such only; for in *Seaman* v. *Dee,* (c) it was resolved by the court that " no action of debt " lies for the interest of money, but it is to be recovered by as- " sumpsit in damages; and where by *deed* the party covenants or " binds himself to pay the principal with the interest, the interest " is not to be included with the principal in an action of debt, " but shall be turned into damages." So in *Dixon* v. *Parkes et al.* where the obligee of a bond received the whole principal after it was payable, it was held that he could not recover the interest in an action on the bond; because as the jury give the interest in the form of damages, there must be something to support them. 1 *Esp. Rep.* 110. Now where the debt is not due, it can-

(a) 1 *Bac. Abr.* 669.
(b) *N. Y. Term Rep.* 69. *Cowp.* 454. *Doug.* 61.
(c) 1 *Ventr.* 198.

not possibly support the damages; to this effect it is the same as though the debt were paid. The interest is merely an accessory to the principal. It is true that in *Herries* v. *Jamieson*, (*a*) the court inclined to the opinion that debt would lie for interest, because *indebitatus assumpsit* would; but still this was intended debt for the *interest* only, and not debt on the bond before the principal is due; for in that case there was one count in debt for the principal, and another count in debt for the interest. If it were an instalment, the case might be otherwise. There would then be a distinct condition; and so was the case of *Masfen* v. *Touchet;* the interest was payable as an instalment by name, and as a part of the debt; but the words " *to be paid annually*" do not constitute such a condition, but they leave it by name mere interest.

But in the second place, the most that judgment can be entered for is the interest that was due at the time of action brought. In this case the plea is *payment;* not at common law, for there nothing but payment at the day was a defeasance; nor under the statute of 4 *Ann.* which relates to entire payments *post diem;* but under the peculiar practice of *Pennsylvania*, and our own defalcation act. It is the settled practice of this state that on the plea of payment the jury shall find the *precise sum* due, *Thompson* v. *Musser;* (*b*) and it is their duty to presume every thing to have been paid, which *ex æquo et bono*, in equity and good conscience ought not to be paid. *Hollingsworth* v. *Ogle.* (*c*) It is under this principle that they weigh the whole transaction, and find precisely the amount due. It probably grew out of the defalcation act, for it is clearly within its equity. But there is here a payment of one year's interest which is indorsed upon the bond; and the case therefore comes within the express words of the defalcation act of 1705, by which if it appears to the jury under the plea of payment " that any part of the sum " demanded be paid, then so much as is found to be paid " shall be defalked, and the plaintiff shall have judgment *for the residue only*, with costs of suit. 1 *St. Laws* 65. The objection that the merits have been tried, is not founded in fact. We could give nothing in evidence that occurred subsequent to the action; and yet we certainly must have an opportunity to do it, because the principal was not due until after the action had been

(*a*) 5 *D. & E.* 556.    (*b*) 1 *Dall.* 462.    (*c*) 1 *Dall.* 260.

1806.

SPARKS
*v.*
GARRI
GUES.

commenced. It must therefore be subject to every objection since that period, or we are concluded by an incomplete trial. We will enter an agreement on record that the judgment for the interest shall be no bar to a future suit.

In reply, it was said, that the case of *Herries* v. *Jamieson* had completely overruled that of *Seaman* v. *Dee* from 1 *Ventris.* The opinion attributed to Lord *Hale* could not be law, or there would be no means whatever of enforcing the payment of interest reserved and made payable *by deed* before the principal; for the deed itself would be a complete bar to the assumpsit. But here the question was not whether interest was debt or damages, but whether the nonpayment of it agreeably to the condition of the bond was not a forfeiture which entitles us to a judgment for the penalty; and no answer on this point has been given to our cases. The plea of payment in this case, as is most evident from the notice and the facts at the trial, has nothing to do with our defalcation act. This act is expressly confined to cases of persons *dealing together, and indebted to each other* upon bonds, bills, bargains, promises, accounts, or the like, where the defendant *does not gainsay* the deed, upon which he is sued. In such a case he may plead payment of all, or part of the sum demanded, and give any bond, bill, receipt, account, or bargain, in evidence. Now the evidence was used exclusively to gainsay the deed; and fraud, misrepresentation, and failure of consideration, were severally objected to it, without any attempt at set-off. The practice of the jury to give the precise sum due, grows out of, and is confined to, cases under this act. This plea in truth has arisen from our want of a court of Chancery, and to let the party in to an equitable defence. If he fails, the same judgment must be rendered that is constantly given in *England,* and in this state, except in cases of set-off, a judgment for the penalty. That the merits have been tried is most evident; for every objection, that could go to the principal, went to the interest; and if the bond was invalid, nothing was due, contrary to the finding of the jury.

YEATES J. We have been called upon by the counsel on each side, to mould the finding of the jury agreeably to the rules of law, and the substantial justice of the case. The defendants' counsel have insisted that the verdict should be entered

for them, contending that the suit in its present structure has been brought prematurely. They admit that a bond conditioned to pay money by instalments, may be prosecuted on one instalment becoming due, though it is otherwise as to a single bill; but they urge that the stipulation of the payment of the interest yearly, is not in its nature an instalment; and further, if it should even be so considered, that a special declaration in debt should have been filed, demanding the interest *eo nomine.* It cannot be denied that this obligation was intended to secure as well the payment of the annual interest, from the 20th *May* 1797, as the 1000 dollars on the 20th *May* 1801, and it is so expressed in the instrument. If therefore the annual interest could not in correct language be deemed an instalment, it would fall under the same principle. The objections to the form of the suit are founded on the expressions imputed to Lord *Kenyon* in 5 *T. R.* 553. The expressions of Lord *Kenyon* and of Justice *Ashhurst*, must necessarily be considered as generally referrible to the subject matter before them, which was a simple contract. The expression of Lord *Hale* in *Seaman* v. *Dee* is strongly doubted, I might say denied. There it was held that no action of debt lies for the interest of money, but that it is to be recovered by assumpsit in damages; but the other two judges held that debt would also lie in such case; and if it was otherwise, injustice would be done where the payment of the interest was stipulated by deed. Neither of them however assert, that this could not be done in a suit brought for the penalty of the bond, nor that it must be effected by a special declaration referring to the condition of the obligation. The very point now under consideration was determined at Nisi Prius at *Lancaster*, between *Graff* and *Whitmore and others*, on a bond worded substantially like the present, wherein I was of counsel with the plaintiff. I therefore assume the position that interest may be recovered in the present form of action, and proceed to consider to what extent that recovery shall be.

It seems a settled principle that the cause of action must be complete when the suit is instituted, and cannot be made good by subsequent events. Where, however, on the sum demanded interest is fairly running on and due, the jury in their verdict should find the same from the commencement of the action until the time of the trial, or if at Nisi Prius to the day in bank; otherwise injustice would be effected. I do not recollect any

other exception to the general rule. No man can be arrested here, unless a good ground of action exists when the writ is taken out; nor can be compelled to defend such a suit. The parties are placed on the same footing, and their relative rights are graduated on the same scale; a defendant cannot avail himself of a set-off which accrued to him after the commencement of the action.

In *Thompson* v. *Musser*, 1 *Dall.* 462. it is asserted by counsel, and concurred in by the court, that the constant practice in all the courts of this state, as well before as since the revolution, has been to enter the verdict, on the issue of *non solvit*, for the sum found to be actually due; but it is otherwise on the plea of *non est factum*, and most other general pleas; the diversity most probably grew out of the defalcation act. The plaintiff's counsel have objected that the defalcation act applies only to *mutual debts*, and that the law in the particular under consideration is confined to three cases: First, where the defendant has paid or satisfied the debt or sum demanded: Secondly, or a part thereof: Thirdly, or where the plaintiff has been overpaid: and that the defence set up here alleges a want of consideration, and that nothing was ever due. It is answered that our act goes farther than the *British* statutes of set-off, by allowing defendant to give any bond, bill, receipt, account, or bargain in evidence, and that the practice of travelling into the want of consideration, primarily arose from the defalcation act, to prevent manifest injustice. It is farther said, that though no payment is made on such an obligation as the present, it is within the equity, if not within the express words of the act of Assembly; but that in all events this case is to be governed by the act, inasmuch as one year's interest had confessedly been paid and was indorsed on the bond. In *Musser* v. *Thompson*, the verdict of the jury was for the entire debt and interest in tobacco, though nothing was paid thereon. The plaintiff's counsel have contended that the bond becomes forfeited by the nonpayment of the year's interest, which was due previous to the commencement of the action, and that the penalty thereby became the legal debt. They insist that judgment should be entered therefor, the merits of the bond having been fully tried, in order to move the court to take out execution for the sum incurred since the time of bringing the action, or to take out a *scire facias* under the 8 and 9 *W.* 3. which we have extended

by our practice. To this it is objected, that our general practice under the plea of payment is adverse thereto, and that the defendants have an unquestionable right to an untrammeled trial of the whole merits, as any sum or sums of money may become due under the obligation.

Independent of any practice which may have obtained on this head, my great substantial ground of refusing my consent to the motion, on the part of the plaintiff, is that the bond would thereby pass *in rem judicatam*, and would in fact amount to a prejudication of matters not put in issue in this action. A judgment concludes a defendant as to all matters of defence which existed anterior thereto, though as to things which happen since the commencement of the suit, they may be taken advantage of by pleas *puis darrein continuance*. I would cautiously guard against every legal difficulty on this score. If at a future day when the trial of the plaintiff's demand for the principal may come on, the defendants may have it in their power to shew an entire want of consideration for this bond, that the lands sold belonged to others who had actually recovered them at law, I think they ought not to be precluded from going into defence upon such subsequent suit brought either in debt or covenant.

Moved by these considerations, my opinion is, that to do equal justice between the parties, the verdict should be entered up for sixty dollars, the year's interest due and payable at the time of the impetration of the writ, together with all the interest due thereon, from the day of payment up to the time of trial. I consider myself correct in this particular, as it is a fixed sum stipulated to be paid on a precise day, and is considered by the court in the nature of an instalment. For the aggregate thereof, I think judgment should be entered and not on the penalty of the bond under the plea of payment in this case.

SMITH J. Previous to our consultation last evening, I had seen and attentively considered the opinion delivered, and I feel difficulties about the manner in which the verdict and judgment ought to be entered in this form of action. On one side, should the verdict be entered for the interest only, due at the time the action was brought, the doubt will be whether a new action can be brought on the same bond, for the interest due afterwards, or for the principal; whether such verdict and

judgment will not be a bar to a future action. The defendants' counsel have agreed to obviate this difficulty by making a special entry on the record that it shall not be a bar. In fact one year's interest only was due at the time the action was brought; whether that was paid or not, was the only fact really in issue on trial, although the merits of the whole were tried without due consideration I apprehend.

It seems to me that the result would be exactly the same, whether the verdict be entered for the penalty, or for the interest due at the time the action was brought, with interest from the time at which it ought to have been paid, except as to the costs, if the interest be under 50*l.* For if the defendants would be let into a defence in a new action, if judgment be given for only the interest due, they would be equally entitled to such defence on a *scire facias* for the instalments due afterwards; or even before leave would be given to take out execution for such instalments, they would on proper cause shewn be entitled to have it tried on an issue directed by the court, whether any defence had arisen which they could not have given in evidence on the issue which has been tried. That the defendants might make such defence is clear to me on the principles of the defalcation act, and our practice of giving fraud, mistake, or want of consideration in evidence; because suppose after the recovery or payment of the interest, and before the principal became due, or before action could be brought for it, the lands for which the bond was given were *bona fide* recovered against the obligor, (he having given due notice to the obligee to defend the title to the land for which the bond was given) by due course of law; it would be contrary to natural justice, that the obligor should be compelled to pay such bond, and the defalcation act and our practice in such cases are founded on the principles of natural justice. Supposing the obligor should be let into a defence, to the extent I have stated, to each instalment as it becomes due, it would be no more inconvenient than if a separate bond had been taken for such instalment, in which case it is clear that the defendant or obligor may make such defence to each bond.

Whether judgment be entered for the penalty, or for the interest only, the form of entering it must be different from any in the books of entries. I therefore suggest to the counsel on each side to draw up a form in which they think judgment

1806.

SPARKS
v.
GARRI-
GUES.

ought to be entered, to enable us better to enter it agreeably to our law and practice, in a manner best calculated to do equal justice between the parties, and to become a rule in such cases hereafter. Difficulties on each side occur to me; and if my brothers should be divided in opinion, as I believe they will, I will take time to advise.

BRACKENRIDGE J. By the defalcation act " If any two or " more dealing together be indebted to each other upon bonds, " bills, bargains, promises, accounts, or the like, and one of them " commences an action, if the defendant cannot *gainsay* the " deed &c. it shall be lawful for such defendant to plead pay- " ment &c. &c." This act therefore does not apply to cases where he *gainsays* the deed by pleading *non est factum*, or where admitting the execution he pleads duress, or under the plea of payment gives fraud, mistake, or want of consideration, in evidence, *in avoidance of the deed*. The penal sum is less than nominal in the case of a set-off under this act; that is, it is not even noticed in the judgment entered, nor is it necessary; for the reducing of the sum in demand by a set-off does not affect the costs. The act renders it clear of this difficulty.

In the case before us, it would certainly be most simple and reasonable to sustain an action of assumpsit for the interest, as for an instalment becoming due; but it would affect the costs, when the sum is within the cognisance of an inferior jurisdiction; and it would introduce another inconvenience; the plea to the execution, or the pleas in avoidance, might be brought into view and made triable *toties quoties* on every instalment of the obligation, unless it could be saved by an averment as an issue already determined. But this would give delay, and increase suits. Again: an action of covenant must be on the whole of the obligation, and yet the judgment for the particular sum recovered. Would not this be in bar of another action on the bond? But can we not reach the justice of the case by a judgment for the *penalty*, with leave to take out execution for the sum due at the time of bringing the action, and also for the sum becoming due up to the time of taking out execution, or what may become due subsequent to the taking out the execution in the first instance.

It is not under the defalcation act, but under the exercise of Chancery powers that we relieve from the penalty; and though

VOL. I.                        X

1806.

SPARKS
v.
GARRI-
GUES.

nominally we pursue for that sum, yet the sum really due is the debt. But he that will have equity must do equity; and on this principle it was early in practice to suffer the penalty of an obligation to cover a simple contract debt. If so, why not cover a sum that has become due in the intermediate time, and that depends on the same writing. If any thing has arisen which goes to a sum becoming due since the action brought, or plea pleaded, or judgment entered, this matter on motion may be shewn to the court; and if of such a nature as to require it, an issue may be directed to try the fact, and in the mean time the penalty suspended, and execution staid as to the sum in controversy. Or let judgment be entered for the penalty, subject to a defence to any instalments becoming due since the action brought, provided that defence be on a ground arising since bringing the action.

It may be seen therefore, that I consider the defalcation act as having no application to the case before us; nor do I consider our rule of letting in a defence to the consideration &c. of the bond under the plea of payment, as making any difference, save as to the way of getting at the truth in a court of law. I substitute motion and leave to take out execution, and the framing an issue if necessary, in lieu of the *scire facias*. But let the thing take the course of the *English* practice if you so choose it, and let a *scire facias* issue *toties quoties* on the instalments; under the plea of payment nothing but payment could be proved; for it would not come within the meaning of the rule of pleading, to travel into the consideration of the bond, as that issue is already tried. I again say that it is under the written rule of the court, and which rule is from the Chancery power of the court, that payment here is pleaded; it is no set-off, nor has it any thing to do with that act.

There being a difference of opinion in the court, a second argument was directed upon the appointment of the present Chief Justice; and it accordingly took place at *March* term 1806, by *Levy* for the plaintiff, and by *Hare* and *Rawle* for the defendants, upon the same points which had been already urged; except that it was now conceded that there must be judgment of some kind for the plaintiff; and this day the judges delivered their opinions.

TILGHMAN C. J. This is an action of debt on a bond in the penalty of 2000 dolls. dated 20th *May* 1797, and conditioned for payment of 1000 dolls. 20th *May* 1801, with lawful interest to be paid annually from the date. At the time of the commencement of the action, one year's interest, amounting to sixty dollars, was due and unpaid. The plaintiff declared for the penalty of the bond in the usual form, to which the defendants pleaded payment, with leave to give the special matter in evidence. The defendants, agreeably to the practice and rule of this court, gave notice to the plaintiff that under the plea of payment they meant to give in evidence sundry matters, which I shall not particularly mention, but which if established were of such a nature as to *avoid the bond.* The general replication was made to the plea of payment, and issue joined. The jury found for the plaintiff; and by the consent of the parties it is now submitted to the court in what manner judgment shall be entered, that is to say whether for sixty dollars the amount of the interest due, or for the penalty of the bond.

It is a point of considerable importance; for if the judgment is entered only for the sixty dollars, the plaintiff must bring another action for the interest accrued since this action was brought, and for the principal; and the defendant will again put in the same plea, which has been already tried and determined against him.

The nonpayment of interest annually was a forfeiture of the bond. It should seem therefore that the issue being found for the plaintiff, the judgment according to the general principles of the law should be entered for the penalty of the bond. It is not denied by the defendants' counsel but that this is according to the practice in the courts of common law in *England.* But they have made several objections founded on the law and practice of *Pennsylvania*, and particularly on an act of Assembly passed in 1705, commonly called the defalcation act, which directs that in certain cases judgment shall be entered, not for the *penalty* of the bond, but for the sum which by the jury shall be found to be *due* thereon. This is the only difficulty in the case; but it appears to me to be rather an apparent than a real difficulty; for it is founded on a supposition that the plea of payment with leave to give evidence of an equitable defence in bar of the action, is derived from the defalcation act. But that is not the case. The defalcation act provides that where there have been mutual dealings between plaintiff and defendant, if defendant *cannot gainsay the claim of the plaintiff whereon he is sued,*

he may plead payment of all or any part of the debt or sum demanded, and give any bond, bill, receipt, account, or bargain, in evidence. If it shall appear that he has *fully* satisfied the claim of plaintiff, judgment shall be given for him; if only *part* has been satisfied, the plaintiff shall have judgment for the *residue;* if the plaintiff has been *overpaid,* the jury shall give a verdict for the defendant, and certify in how much the plaintiff is indebted to the defendant, which may be recovered by the defendant in a *scire facias* against the plaintiff. Now the words as well as the spirit of this act extend only to cases of set-off where the defendant acknowledges the deed, bargain, or account, on which the claim of the plaintiff is founded, but opposes it by payments or by another claim of his own. But the case before the court is widely different; for the defendants set up a defence, not consisting of payments or set-off, but which goes to the total destruction of the plaintiff's cause of action. On what then is this kind of plea founded? It has arisen from the particular situation of *Pennsylvania,* in which there is no court of equity, and therefore the courts of common law jurisdiction have very properly adopted a mode of practice by which defendants are permitted to avail themselves of an equitable defence. But it never was intended that an equitable defence, which goes in bar of the plaintiff's whole cause of action, should be tried *more than once.* This would be going beyond the relief granted by courts of equity; and no case has been cited to shew that more than one trial has been had under similar circumstances in this state. It has been shewn indeed, that where the special matter has been given in evidence under a plea of payment, judgment has been entered for the sum found by the jury to be due. But in all the cases cited, the whole dispute has been finally settled, and the sum found due on the bond was the whole that the plaintiff could ever be entitled to. The plaintiff therefore would have no objection to entering judgment for that sum. But in cases like the present, if judgment is entered only for the sum due at the time the suit was commenced, the plaintiff will be driven to a new action for every future year's interest, and the parties involved in a scene of endless litigation.

It has been also objected, that by an entry of judgment for the penalty, the defendants will be debarred from the benefit of a defence founded on circumstances arising after the commencement of the action. But that is not the case. The plaintiff in the first instance is only allowed to take out execution for the sum

due when the action was commenced; he must move the court for future executions; and then if it is made to appear that the defendant has a defence, *other than that which has been tried,* and *arising subsequent to the suit,* the court have it in their power to see that justice shall be done.

It is extremely convenient, and prevents a multiplicity of suits, to enter judgment for the penalty of bonds, and to give permission to the plaintiff to take out execution for the different sums as they become due, according to the condition. I can see no object in entering judgment only for the interest due at the time of the action brought, but to let the defendants into a second trial of what has been already determined: an object subversive of a very valuable principle of law, and tending to the increase of expense and litigation. *Expedit reipublicæ ut sit finis litium.*

I am of opinion that judgment be entered for the penalty of the bond, with liberty for the plaintiff in the first instance to take out execution for *sixty* dollars.

YEATES J. said he was under the necessity of adhering to the opinion which he had before delivered; that is, that judgment should be entered for the sixty dollars, with interest thereupon from the time of issuing the writ, but without costs, as the sum did not amount to fifty pounds; and that he could not think that the admission of the execution of an obligation by the obligor, and shewing at the trial that it would be the height of injustice to exact the payment thereof under all the circumstances of the case, could be denominated *gainsaying* the deed. It was no more in his idea, than if he could prove that the full contents of the bond had been discharged in current money.

SMITH J. and BRACKENRIDGE J. agreed in opinion with the Chief Justice, and said that the defendants ought to have liberty to make defence on future instalments, provided such defence arose since the commencement of this action, and was not the same that had been tried.

> Judgment for the Penalty, with leave to
> take out execution for sixty dollars.

At a subsequent day the question was argued before the Court, whether the plaintiff was entitled to charge interest on the annual interest of the bond, which was decided in the negative.