Johnson, J.,
dissented, as follows:
Distrustful as I am of my own judgment when it leads me to differ from the opinion of a majority of my brethren; and willing, as I always am, to yield to that high authority on doubtful questions, I cannot *persuade myself to give even a reluctant assent to the doctrine established in this case. I think it subversive of' the morals and the interests of the community, and calculated to open a high road to the most abominable usury, and to break down the guards which the law has placed over the hard-hearted usurer.
The policy and propriety of regulating interest on money by law, have been called in question, I am aware ; but I am inclined to think it may be vindicated. It is not, however, my intention, nor is it necessary, to discuss that question. It belongs to another department of the government ; and it is sufficient for my purpose, that I find on our statute book a law forbidding the reservation of more than seven per cent, per an-num, and in that proportion, for a greater or less period, for the loan of money, &c.
In considering this question, I shall, in the first instance, lay aside the consideration, that in this case there is no express stipulation, that the annual interest should become principal, and carry interest; and consider it on the broad ground, that in whatever shape it may be put, it is subversive of the laws against usury.
Upon a rough calculation, which I have made, a sum put to interest on the principle that the annual interest shall carry interest, will, in the short period of twenty years, produce an average amount, or annual interest, of about twenty-six per cent But, if the contract should provide for the quarterly or monthly payments of the interest, an inconsiderable sum would, in a- short time, beggar arithmetical calculation. It were better to repeal the laws against usury, and to suffer the unfortunate borrower to rush into ruin at once, than to steal upon him by those almost imperceptible means ; for although it may be said that he enters into it ■with his eyes open, yet we know that those who are pinioned with the hard hand of necessity, seldom make the necessary calculations as to consequences. It has been said, that our statute provides* for the annual interest only, and that any contract making the accruing •- *398 interest payable at shorter periods, would have the effect of giving a greater annual interest, and therefore be void. But from the best consideration I am enabled to give it, I am at a loss to see the distinction. It is true, that a year is given to fix the rate and proportion of interest; but it is equally true, that the statute itself fixes that rate as the standard by which it is to be calculated, for a shorter or longer period; and if the doctrine contended for on the part of the motion, be established, I see no reason why the lender may not, by his contract, make the interest payable, and become principal de die in diem ; and where this would end, I leave to those whose interest may require it, to make the calculation. With regard to the particular case under consideration, I can see no difference between this contract and every other out of which interest would arise, except that it gave the plaintiff a right to sue on the non payment of the interest.
In all cases, where interest is reserved, and the payment of the principal and interest is postponed until a given day, the interest as well as the principal will then carry interest. So, that although the sum borrowed carry only legal interest, up to the time to which the payment is postponed, yet, after that period, a greater interest is allowed. It is said, however, that where the contract is to pay the interest at stated periods, it is the right of the lender to demand it, and the duty of the borrower to pay it; and having it in his possession, he may again put it to interest. This is true. But I think the statute gives the answer to this argument. The lender is not permitted to demand more than seven per cent, per annum, and at that rate, for the principal sum borrowed. In questions of construction, some indulgence is due to th'e habits of the world, and to the indolence of mankind ; for they are so deeply rooted, that we had as well attempt to reverse the laws of nature, as to alter them.
.,.-01 It has been further insisted, that the question is resolved into •J the inquiry, whether the contract is, or is not, void, as being usurious ? that, if it is not, we are bound to carry it into effect.' That question might arise where the contract provides that the interest should become principal, and carry interest; but in this case it is not doubted that the contract itself is legal; but I think the doctrine contended for would give to the contract an usurious, and consequently an illegal effect. When the contract itself provides that the interest shall carry interest, I am not prepared to say that the whole contract is void. On the contrary, I am inclined to think that it is good, as to the principal sum, and the legal interest, but void as to the provision, on account of its tendency to usury, and on account of its being predicated on a consideration which had no existence at the time; and which I think I have shown never could have had an existence. To which I will only add, that if it had for its basis, a view to an increased rate of interest, it is usury, and if it had not, there was no consideration.
On the ground of authority, I might, I think, content myself with the able and masterly review which Chancellor Kent has taken of them, in the case of the State of Connecticut v. Jackson, 1 Johnson’s Chan. Rep. 18, in which he comes to the conclusion, that interest upon interest ought not to be allowed, except in a few cases, which furnish exceptions to the general rule ; within which it is not pretended, that this case falls. His reasoning, as well as his conclusion, is so satisfactory to my mind, that I *399 cannot clo better than adopt them as my own. I cannot, however, forbear to add the authority of Lord Chancellor Cowper, in the case of Lord Ossulston v. Lord Yarmouth, 1 Salk. 449. He says, an agreement at the time of the mortgage will not be sufficient to make future interest principal; but to make interest principal it must become due, and then an agreement concerning it may make it principal.- Vide, also, Ex’rs. Lewis v. Ex’rs. Bacon, 3 Hen. & Mun. 89, 116. Sparks v. Garrigues, 1 Bin. 165. It is said, however high this authority may be, it is the *deeision of a Court of Chancery, in which the rule may r be different from that which governs a court of law. It is true, 01 that, in the case referred to, Chancellor Kent has left that question unsettled ; and he says, that perhaps a court of law would not carry such a contract into effect. But on this subject my mind is equally satisfied. The jurisdiction of the Court of Chancery differs little from that of the court of law, except in the mode of obtaining evidence and administering relief. It is equally bound by the rules of law in the construction of contracts, and has no more power to carry into effect a contract, illegal in itself, and void of consideration, than this court. The case of Le Grange v. Hamilton, 4 D. and E. 613, cited on the part of the motion, establishes a position that has not been denied. It is, that where payments have been made on a contract carrying interest, the interest shall be first deducted out of the payment, and the balance passed to the payment of the principal sum ; and that a contract providing for it is not usurious. It is not usurious, because it is the legal consequence of a contract to pay interest on money ; but I'would say, that it was an useless and unmeaning surplusage. All the direct authorities which have been adduced on the part of the motion, are Greenleaf v. Kellogg, 2 Mass. Rep. 568, and Taylor, N. C. Reports, 231. To these are opposed the cases above cited, and the current of English decisions. Perhaps, too, these may have arisen out of the peculiar wording of their statutes against usury ; or, perhaps, they may be found in the rage which has run the rounds of the United States, within the last few years, to loose entirely the shackles, which the laws against usury impose. As highly, therefore, as I respect these authorities, when thus supported, I cannot surrender my own opinion. This opinion has grown up with me from my infancy, and is taught as a lesson in schools; and I venture to say, that there is not a school boy, or a counting house clerk, who has learned to calculate interest, that will not tell you that compound interest is not lawful; and *this is surely one species, at least, of compound interest. Upon inquiry, also, among merchants, and money brokers, it will be L found, that such a principle of calculating interest, has never been recognized as lawful.
H. A. He Saussure, for the motion. Prioleau, contra.
Gantt, J., concurred with Johnson, J.
Rule made absolute, (a.)

) See Howard v. Harris, 1 Vern. 194. R.
See case in Eq., Eaves, Kennedy and others, in Errors, 10 Rich. Eq. ; O’Neall v. Bookman, 9 Rich. L. 80 ; Id. v. Sims, 1 Strob. 115; Be Bruhl v. Neaffer, 1 Strob. 426; Singleton v. Lewis, 2 Hill, 408.